Wachtler, J.
(concurring). At the outset we note that six members of this court are to reverse the convictions for the sabbath law violations in this case, finding the statute or manner of enforcement defective.
In our view the constitutionality of these laws should not be left for another day. The instant record establishes that the municipality lacks the resources and motivation to insure universal enforcement of the blue laws. Thus it becomes apparent that such a statute may only be enforced by having public officials respond to private complaints. This is true although the complaints may be orchestrated by those with ulterior motives. The fact that Judge Jasen finds the only feasible manner of enforcement to be discriminatory, as a matter of law, signals a serious infirmity in the statutory scheme. We would hold that the sabbath law challenged (General Business Law, § 9) is unconstitutional.
Although this law is traceable in the common law to the foundations of our culture (see, generally, People v Hoym, 20 How Prac 76; McGowan v Maryland, 366 US 420; 83 CJS, Sunday, § 3; 1918B LRA 1109) the obligation to refrain from all endeavors denominated as work, is an imperfect one and therefore is limited to those activities delineated by statute (Merritt v Earle, 29 NY 115, 116a). Thus, all transactions not *333 prohibited by statute are legal. Originally, the only exceptions to the sabbath prohibitions were works of necessity or charity. As the secular purpose of the blue laws was pushed to the forefront, exceptions related to recreational activities were added. Today we are confronted with a statute containing a polyglot of exceptions to the general closing mandate. The appellants contend, inter alia, that this statute violates the establishment clause of the First Amendment and that the classifications established by the statute have no rational relationship to the purpose of the law, and consequently, are violative of equal protection.
The entire court is in agreement that the statute in question does not transgress the prohibition against establishment of religion. However, from this common ground, the court divides three different ways. We would reverse on the ground that the instant classifications violate equal protection.
It is axiomatic that where there is no suspect classification or fundamental interest involved, a statute which treats those similarly situated differently must bear a rational relationship to a legitimate legislative objective. There is no doubt that the Sunday closing laws reflect a legitimate exercise of the police power to promote the public health, safety and general welfare (see, e.g., People v L. A. Witherill, Inc., 29 NY2d 446, 449; People v Genovese, 24 NY2d 917). As we noted in People v Friedman (302 NY 75, 79-80) the sabbath laws are "in accord with , the general experience of mankind that it is wise and necessary to set apart such a day [Sunday] at stated intervals for both the physical and moral welfare of the members of a State or community.” Nevertheless, it is our view that the classifications of commodities and activities prohibited here are so arbitrary and capricious as to be without a substantial relation to the object of the legislation.
The statute in question is a general closing law which prohibits all manner of public selling (General Business Law, §9). This general prohibition against selling is subject to certain exceptions, ranging from prepared tobacco to gasoline and confections. One need only analyze these exceptions in light of the statutory purpose and common experience to realize that they are totally lacking in rationality. By way of illustration, one of the exceptions is for meals sold and to be eaten on the premises. Yet, contrary to common observation and the demands of our mobile society, the sale of take-out meals such as burgers, pizza and fried chicken, is prohibited *334 (General Business Law, § 9, subd 2). Another subdivision relating to automotive supplies allows the sale of gasoline, oil and tires only; but prohibits the sale of certain safety devices such as windshield wiper blades, headlights and light bulbs (General Business Law, § 9, subd 4). Paradoxically, the New York State Thruway Authority actually requires by contract that service stations be open on Sunday and offer for sale items which are prohibited for sale. These illustrations are just a few of the arbitrary classifications incorporated in this statute which are wholly irrelevant to the achievement of the State’s objective (see McGowan v Maryland, 366 US 420, 425, supra). When, as here, a system of classifications is so lacking in rationality as to obscure or subvert a legitimate legislative goal, that statute is violative of equal protection and should be declared unconstitutional.
The respondents vigorously contend that the opposite result is mandated under the principle of stare decisis. We do not find this contention persuasive. While the earlier cases express no doubt concerning the validity of the blue laws (see, e.g., People v Havnor, 149 NY 195; People v Dunford, 207 NY 17; Merritt v Earle, 29 NY 115), the more recent cases are less certain and allude to possible constitutional infirmities in the statutory scheme (see, e.g., People v Weston’s Shoppers City, 30 NY2d 572, 574; cf. People v L. A. Witherill, Inc., 29 NY2d 446, 449, supra).
In addition, stare decisis, the doctrine of standing by the precedents of previously decided cases, calls for judicially responsible adherence to prior determinations, not mechanically slavish reiterative duplication. Where earlier constitutional decisions are involved "[i]t is thus not only our prerogative but also our duty to re-examine a precedent where its reasoning or understanding of the Constitution is fairly called into question” (Mitchell v Grant Co., 416 US 600, 627-628 [Powell, J., concurring]). "This is strikingly true * * * of cases under the equal protection clause when the question is whether there is any reasonable basis for the classification made by a statute” (Burnet v Coronado Oil & Gas Co., 285 US 393, 410 [Brandeis, J., dissenting]).
In this instance, as this record fully discloses, the added experience in the years since our prior decisions persuasively demonstrate that whatever it may have been possible then to say with reference to the checkered classifications of the Sunday blue laws, the proliferation of added exceptions since *335 our court last spoke* plus the accumulation of further experience and wisdom makes it impossible for us by the expedience of bland citation to prior cases to uphold the wholly irrational classification of the statute. We are obliged additionally to observe that no attempt is made by the dissenter to explain or justify the statutory mosaic; he points only to the decisions of yesterday. Such rigid adherence to stare decisis fails to reconcile and accommodate the demands of our ever-changing system (see Graves v Schmidlapp, 315 US 657, 665). We believe that a more contemporary view compels us to discard this statute which is incapable of enforcement and flagrantly ignored.
Accordingly, we would reverse by declaring section 9 of the General Business Law unconstitutional.

 1973 amendment to the General Business Law (§ 9, subd 4; L 1973, ch 995, § 1, eff June 23, 1975) inserted "items of art and antiques”; the Laws of 1973 (ch 414, § 7; Pari-Mutuel Revenue Law, § 205) permitted pari-mutuel betting and off-track betting on Sundays.