MICHAEL WEINSTEIN, Plaintiff, *v.* JOHN McKENZIE, as Commissioner of Docks of the City of New York, and LEWIS J. VALENTINE, as Police Commissioner of the City of New York, Defendants.

Supreme Court, Special Term, New York County, November 10, 1941.

*Mitchell D. Schweitzer*, for the plaintiff.

*William C. Chanler, Corporation Counsel* [*Charles C. Weinstein* and *James Hurley* of counsel], for the defendants.

PECORA, J. Plaintiff, a licensed taxicab owner and operator, has commenced this action for a declaratory judgment to determine the legality and validity of a regulation issued by the commissioner of docks of the city of New York regulating the manner in which taxicabs may solicit passengers and requiring the payment of certain fees at the New York Municipal Airport (LaGuardia Field). Upon this motion plaintiff seeks a temporary injunction to restrain the defendants from enforcing the rule.

The facts are not in dispute. The commissioner of docks promulgated rule 33 governing the operation of automobiles, trucks and other automotive equipment at LaGuardia Field. Paragraphs 11a and 12 relate to the operation and location of feeder taxi lines or passenger pickup points. It is provided the sum of ten cents be paid to the city by the driver or owner of a taxicab each time it enters the area designated as a feeder taxi line or passenger pickup point. The payment is to be refunded if the space is surrendered without the driver having received a fare. Plaintiff contends that the commissioner of docks had no power to promulgate the rule.

The regulation itself purports to have been enacted pursuant to authority granted by chapter 29 and section 885 of the New York City Charter. Section 704 of the charter gives the com-

missioner of docks the exclusive charge and control of airports, airplane landing sites and seaplane bases owned by the city, except as otherwise provided in the charter or by statute. Section 885 provides that each head of an agency may make rules and regulations for the conduct of his office or department and to carry out its powers and duties. There can be no question of the right to confer such regulating powers upon municipal authorities. (*Cherubino* v. *Meenan*, 253 N. Y. 462.) In *Hesse* v. *Rath* (249 N. Y. 436) the court said: " A statute (L. 1928, ch. 647, amending General Municipal Law, Cons. Laws, ch. 24) authorizes the cities of this State to establish, construct, equip, maintain and operate airports or landing fields for aeroplanes and other aircraft. The local legislative body may regulate the use and establish fees or charges."

In authorizing the development of municipal airport, LaGuardia Field, by resolutions dated December 10, 1937, the legislative body of the city of New York determined that the project was " revenue producing." The municipal airport is, therefore, a project operated both for public purposes and for revenue. Thus the commissioner of docks may obtain revenue from every available source directly connected with the management of the airport, and is justified in levying charges for the privilege of doing business upon such property. (*Robia Holding Corp.* v. *Walker*, 257 N. Y. 431.)

The rule promulgated does not conflict with section 435 of the New York City Charter. That section imposes upon the police department the duty to control vehicular traffic and gives the police commissioner the power to make rules and regulations for the conduct of vehicular traffic in the use of public streets. The area comprising the municipal airport, however, is not a part of the public streets or highways. For the same reason section 54 of the Vehicle and Traffic Law is not violated. Both of these statutes apply only to public highways. In *People* v. *County of Westchester* (282 N. Y. 224) the court lays down the test for determining what is a public highway. The municipal airport does not fall within the definitions therein set forth. Its area was acquired as wharf property pursuant to section 706 of the New York City Charter. Hence the public may be restricted from entering it except in compliance with regulations governing its operation. The city, by authority of the board of estimate and apportionment, has issued millions of dollars in corporate stock and serial bonds for the purpose of developing the airport. The property which comprises the municipal airport is private in nature, owned and operated by the city of New York in its corporate or proprietary capacity. Consequently, as it does not constitute any part of a

public highway, rule 33 does not contravene the provisions of either the Vehicle and Traffic Law or the New York City Charter.

Nor do I find any unreasonable or arbitrary discrimination in the rule. All taxicabs as a class are subject to rule 33. Other vehicles for hire are not given favored privileges.

The motion for a temporary injunction is denied.